UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARC E. VERZANI, individually and on behalf          :
of all others similarly situated,                    :
                                                     :        No. 09-CV-2117 (CM)(FM)
                                                     :
                            Plaintiff,               :
                                                     :
            -vs.-                                    :
                                                     :        **ECF CASE**
Costco Wholesale Corporation,                        :
                                                     :
                            Defendant.               :
-------------------------------------------------------------------X


### REPLY MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND


LAW OFFICES OF WILLIAM R. WEINSTEIN
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 575-2205
wrw@wweinsteinlaw.com

ATTORNEYS FOR PLAINTIFF
AND THE CLASS


Dated:  New York, New York
        August 31, 2010

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ........................................................................................................1

I.    Costco's Shrimp Cocktail Tray Labeling Practice Is Deceptive Under
New York General Business Law ("GBL") § 349 ..............................................1

II.   Costco's Tray Is Subject To 21 C.F.R § 102.54 and/or 21 C.F.R. § 102.5,
And Costco's "NET WT 16 oz (1.00 lb)" Label Disclosure Alone
Is Insufficient ..........................................................................................3

III.  Plaintiff's GBL § 349 Claim Arises Under New York's Concurrent Power
To Prevent Deceptive Labeling Practices, And Does Not Conflict With
Federal Law ............................................................................................7

CONCLUSION ....................................................................................................10

## **TABLE OF AUTHORITIES**

*Page*

**CASES:**

*A. Esteban & Co., Inc. v. Metro. Transp. Auth.,*
    2002 WL 1059169 (S.D.N.Y. May 24, 2002) .................................................... 4

*Ackerman v. Coca-Cola Co.,*
    2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010) ................................................... 3

*Broder v. Cablevision Sys. Corp.,*
    418 F.3d 187 (2d Cir. 2005)........................................................................... 8, 9

*Conboy v. AT&T Corp.,*
    241 F.3d 242 (2d Cir. 2001)................................................................................ 8

*Frank G. v. Board of Educ. of Hyde Park,*
    459 F.3d 356 (2d Cir. 2006)................................................................................ 4

*In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litig.,*
    2009 WL 1703285 (C.D. Cal. June 17, 2009) ................................................... 8

*Jay Burns Baking Co. v. Bryan,*
    264 U.S. 504 (1924)...................................................................................... 1, 6

*Karlin v. IVF Amer., Inc.,*
    93 N.Y.2d 282, 690 N.Y.S.2d 495 (N.Y. 1999) ........................................... 3, 9

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996)........................................................................................... 7

*PDK Labs, Inc. v. Friedlander,*
    103 F.3d 1105 (2d Cir. 1997)............................................................................. 9

*Resnik v. Swartz,*
    303 F.3d 147 (2d Cir. 2002)............................................................................... 4

*Riley v. Cordis Corp.,*
    625 F. Supp. 2d 769 (D. Minn. 2009)............................................................... 8

*Schmidinger v. City of Chicago,*
    226 U.S. 578 (1913)........................................................................................... 1

*U.S. v. Ron Pair Enterprises, Inc.,*
    489 U.S. 235 (1989)........................................................................................... 4

*Wyeth v. Levine,*
    129 S. Ct. 1187 (2009) ........................................................................................... 7, 9

## STATUTES AND REGULATIONS:

15 U.S.C. § 1461 ...................................................................................................... 8

15 U.S.C. § 1541 ...................................................................................................... 2

21 U.S.C. § 341 ........................................................................................................ 2

21 U.S.C. § 343(a) & (e) .......................................................................................... 2

21 U.S.C. § 343(i)(2) ............................................................................................... 5

21 U.S.C. § 343-1(a)(2) & (a)(3) ............................................................................. 8

21 C.F.R. § 101.105 .............................................................................................. 3, 6

21 C.F.R. §§ 101.105(g), (q) .................................................................................... 6

21 C.F.R. § 102.5 .............................................................................................. *passim*

21 C.F.R. § 102.54 ............................................................................................ *passim*

N.Y. Ag. & Mkts. Law § 201 ................................................................................... 2

New York General Business Law § 349 ............................................................. *passim*

## OTHER AUTHORITIES/MISCELLANEOUS:

*Deuteronomy* 25:13 .................................................................................................. 1

*Leviticus* 19:36 ........................................................................................................ 1

*Proverbs* 20:10 ........................................................................................................ 1

*The Random House College Dictionary* (rev. ed. 1984) ........................................... 5

Plaintiff Marc E. Verzani ("Plaintiff") respectfully submits this reply memorandum of law in support of his motion for leave to file his Second Amended Class Action Complaint ("Amended Complaint") (cited as "¶__").

I.     **Costco's Shrimp Cocktail Tray Labeling Practice Is Deceptive Under New York General Business Law ("GBL") § 349**

The decision of the United States Supreme Court in *Schmidinger v. City of Chicago,* 226 U.S. 578 (1913), confirms the right of the states -- extending back more than 100 years -- to exercise their traditional police powers to require the use of accurate standard weights and labels in the connection with the sale of consumer food products.[1]   Justice Brandeis eloquently articulated the deception deriving from a lack of accurate standard weights and measures in his lengthy dissent in *Jay Burns Baking Co. v. Bryan*, 264 U.S. 504, 44 S. Ct. 412 (1924).  Joined by Justice Holmes, Justice Brandeis disagreed with the conclusion of the majority that the regulation by the states of *overweights* in connection with loaves of bread is arbitrary and unconstitutional. As Justice Brandeis observed, the imperfect "memory" of consumers with respect to sizes and weights of consumer food products like bread can enable the sellers of those products to reduce the weight and thus value of the product without detection.  264 U.S. at 519.  Justice Brandeis further observed -- based on the experience of many states, as well as Chicago under the statute upheld in *Schmidinger* -- "that the absence of a provision prohibiting excess weights seriously impair[s] the efficacy of the ordinance" requiring minimum weights. 264 U.S. at 521-22.

The gravamen of Plaintiff's proposed Amended Complaint is that Costco's failure to accurately state or disclose the percentage and/or the weight of the shrimp on the label of its Shrimp Cocktail Tray ("Tray"), and the fact that the weight of the shrimp varies significantly

---

[1]     In fact, the requirement for the use of just weights and measures, and the prohibition against "differing weights and measures," is Biblical.  *See* Leviticus 19:36; Deuteronomy 25:13; Proverbs 20:10 (collected at http://bible.cc/leviticus/19-36.htm).

from Tray to Tray, is a materially deceptive and misleading practice because none of Costco's customers can know how much shrimp -- the most expensive, "characterizing ingredient" -- they are getting, and how much they are paying for it.  *See, e.g.,* ¶¶2-3, 6(a)-(e), 28-33, 34-37; *see also* ¶35 (neither of Costco's "experts" could determine quantity of shrimp in Tray).  As a result of Costco's labeling practices: (i) customers wrongly believe they are receiving the same amount of shrimp in each Tray; (ii) the variances cause customers to pay materially different amounts per pound for the shrimp they do receive; (iii) Costco can unilaterally reduce the amount of shrimp in the Tray across the board without detection; (iv) because customers do not know how much shrimp they are getting, no one can make an accurate value comparison between the Tray and competing products with greater value; and (v) a significant number of customers reasonably believe they are receiving one pound of shrimp in the Tray.[2]  *Id.*

Federal and state statutes and regulations establish that Costco's labeling omissions are deceptive and prohibited.  *See* 21 U.S.C. § 341 (purpose of federal labeling statutes is to "promote honesty and fair dealing in the interest of consumers"); 15 U.S.C. § 1541 ("labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons"); 21 U.S.C. § 343(a) & (e), N.Y. Ag. & Mkts. Law § 201 (prohibiting "misbranding" including "false *or misleading*" labels, or failing to display required

---

[2]     Plaintiff stands by this allegation, notwithstanding the Court's prior decisions.  First, while these customers may understand that the Tray's $9.99 price includes both the shrimp and cocktail sauce, they have no reason to view the cocktail sauce as anything more than a relatively inexpensive condiment included as a convenience, rather than a weighty filler used by Costco to justify less than one pound of shrimp (¶6(e)).  Nor do customers even know how much cocktail sauce they are getting (¶36).  Second, *Costco itself was confused by the fact that the Stop & Shop Entertainment Platter label **it** placed in the record actually does disclose the weight of shrimp in the platter* (¶40), and so too may the label on Costco's 4 pound shrimp platter (¶39) -- thus confirming the ambiguity and inconsistency of Costco's practice in the marketplace.  Third, there would be no possibility of confusion whatsoever if Costco included the percentage and/or weight of the shrimp as required and/or allowed under the Federal labeling regulations – *as is done on a competing shrimp cocktail ring Costco also sells* (¶38).  *See* Argument II, *infra.*

2

information "in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use"); 21 C.F.R. § 102.5(b) (requiring disclosure of percentage of "characterizing ingredient . . . when the proportion of such ingredient . . . has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient . . . is present in an amount greater than is actually the case");  21 C.F.R. § 101.105 (requiring and/or allowing "[d]ual or combination declarations of net quantity" if the omission of such information "does not facilitate value comparisons by consumers and offers opportunity for consumer confusion.").   The FDA has confirmed that the amount of shrimp in a shrimp cocktail is "material."  *See* Arden Decl., Ex. B, p. 50 (*"The amount of shrimp there is in a shrimp cocktail, for example, is of clear importance to consumers in making their purchasing choices and in choosing among competing brands . . . and is a material fact."*) (emphasis added).

GBL § 349 "on [its] face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad. *Karlin v. IVF Amer., Inc.,* 93 N.Y.2d 282, 290-91, 690 N.Y.S.2d 495 (N.Y. 1999).  Costco's labeling practice is deceptive for all of the reasons alleged in the Amended Complaint and confirmed by federal and state statutes and regulations.  *See also Ackerman v. Coca-Cola Co.,* 2010 WL 2925955 at *23 (E.D.N.Y. Jul. 21, 2010) (paying higher price for deceptively labeled product states claim under GBL § 349).

## II.   Costco's Tray Is Subject To 21 C.F.R § 102.54 and/or 21 C.F.R. § 102.5, And Costco's "NET WT 16 oz (1.00 lb)" Label Disclosure Alone Is Insufficient

Although Costco denies that its Shrimp Cocktail Tray is a "shrimp cocktail" governed by the percentage disclosure requirements of 21 C.F.R. § 102.54 (quoted ¶45), the usual rules of regulatory construction require the opposite conclusion.  First, the Court should rely on the plain meaning of the regulation and its purpose under the FDA labeling statutes and regulations.  *See*

3

*A. Esteban & Co., Inc. v. Metro. Transp. Auth.,* 2002 WL 1059169 at *1 (S.D.N.Y. May 24, 2002); *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive.").  Second, all of the parts of the statute or regulation "are to be read as a consistent whole, and meaning is to be accorded to each constituent part." *A. Esteban & Co., Inc.,* 2002 WL 1059169 at *1; s*ee also, e.g., Resnik v. Swartz,* 303 F.3d 147, 152 (2d Cir. 2002).  Third, assuming *arguendo* the existence of any ambiguity in the statute or regulation, then the Court should "focus upon the 'broader context' and 'primary purpose' of the statute," and "interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." *Frank G. v. Board of Educ. of Hyde Park,* 459 F.3d 356, 370-71 (2d Cir. 2006) (quoting several cases).

On its face, under its plain language, 21 C.F.R. § 102.54 governs the labeling of a "shrimp cocktail" – that is what it says.  Although Costco is quick to point out that one of its "shrimp experts," Mary Snyder, disputed the applicability of 21 C.F.R. § 102.54 to the Tray (Costco Br. 18 n.7), Costco cannot dispute that she was constrained to admit the obvious – that as a matter of fact, the Tray is "just a large shrimp cocktail" (¶26).  The standard Costco receipt for the Tray on its face further confirms the obvious -- that it is a "SHRIMP CKTL" (*id.*).  And the inability of any consumer to know how much shrimp the Tray contains and that the amount and concomitant cost of the shrimp varies, or to make meaningful value comparisons, is the *raison d'être* for the FDA labeling statutes and regulations generally, and 21 C.F.R. § 102.54 specifically.  The fact that the regulation may have been enacted when a predecessor product (the Sau-Sea shrimp cocktail) was the only game in town in the 1970's (Costco Br. 15-20) does nothing to undermine the fact that the regulation and its purpose fit like a glove *now* with respect to the Tray – because consumers *today* are entitled to know how much shrimp they are getting in

4

shrimp cocktail products, as compared to the substantially less expensive cocktail sauce.  The Sau-Sea product has been almost entirely displaced, and is now a *de minimis* part of, and substantially irrelevant to, the prepared shrimp cocktail market in which the Tray competes.

Assuming *arguendo* that Costco is correct that 21 C.F.R. § 102.54 does not apply (and Costco is not correct), then 21 C.F.R. § 102.5 (quoted ¶46) does apply.  First, under its plain, unambiguous language, 21 C.F.R. § 102.5 applies and imposes a percentage disclosure requirement with respect to the "characterizing ingredient" "unless modified by a specific regulation in subpart B" of 21 C.F.R. § 102.  Costco cannot dispute that the shrimp is *the* characterizing ingredient of the Tray – the FDA "Center for Food Safety and Applied Nutrition" webpage confirms it in answer to the question "What are the required label statements on Food?" – found at http://www.cfsan.fda.gov/~dms/qa-indl1.html.  And the applicability of § 102.5 is fully confirmed by its express purpose -- requiring percentage disclosure of the "characterizing ingredient . . . when the proportion of such ingredient . . . has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient . . . is present in an amount greater than is actually the case."  *See also* Arden Ex. B, p. 50 (shrimp is "characterizing ingredient" in shrimp cocktail).[3]

Insofar as Costco contends, or the Court believes, that the Tray requires no more than a label disclosing "NET WT 16 oz (1.00 lb)," then Plaintiff respectfully, strongly disagrees.  21 C.F.R. §§ 102.54 and 102.5 were expressly enacted because the "total net weight" disclosure is inadequate for shrimp cocktail products such as the Tray, with ingredients grossly

---

[3]     Costco's argument that the Tray is not "fabricated" for the purposes of 21 C.F.R. §§ 102.54 and 102.5 (Costco Br. 17-18, 20) is contrary to the plain meaning of the term, which is to "assemble." *See The Random House College Dictionary* (rev. ed. 1984).  Not only is there no reference to Costco's "pre-blended" distinction anywhere in the regulations, but "fabricated" *also* is used in 21 U.S.C. § 343(i)(2) – which Costco concedes applies to the Tray by its practice of listing all ingredients, including the shrimp, in their entirety.

disproportionate in value, like the shrimp in comparison to the sauce, lemon wedges and lettuce. Thus, 21 C.F.R. § 101.105 requires and/or allows "[d]ual or combination declarations of net quantity" if the omission of such information "does not facilitate value comparisons by consumers and offers opportunity for consumer confusion."

Finally, it is important to note that Costco's labeling practices *do not* comply with the FDA labeling guidance quoted at page 13 of its brief.  That guidance requires Costco to disclose as the "net weight" "*the average weight of the . . . food*" in its Tray.  Nowhere does Costco disclose to consumers the "average weight of the food" in its Tray.  Instead, it picks and chooses only the shrimp and the sauce – *but there is no "average weight" for the shrimp and sauce because they (and more importantly, the shrimp) vary materially from Tray to Tray* -- one of the reasons Costco's practice is deceptive (¶¶3, 28-33).  Importantly, Costco has never cited any authority that allows it to exclude the lemon wedges and the lettuce, which actually bring the food weight to in excess of 20 ounces in most instances.  However, 21 C.F.R. §§ 101.105(g) and 101.105(q) require the *total net weight* to be "accurately revealed," and *prohibit* unreasonably large variations from the declared weight -- both up and down.  *Cf. Jay Burns Baking Co.*, 264 U.S. at 521-22 (Brandeis, J.) (failure to prohibit overweights undermines efficacy of minimum weight provisions).  *In fact, Costco also sells the comparable, ready-to-serve/thaw and eat Harvest of the Sea shrimp cocktail ring* -- which *does* accurately disclose *both* the actual weight of the shrimp and the sauce, as well as their total combined net weight.  *See* ¶38.  Costco entirely avoids this fact in its papers.  There is no reason Costco's Tray should be any different.

If Costco is required or allowed to disclose only a materially understated 16 ounces net weight for its Tray without more, there is nothing to prevent it from deciding at some point to include the lettuce and/or the lemon wedges in its computation and/or to increase the size of the

sauce container and/or to use some combination of all of these to justify a reduction in the amount of shrimp – none of which could be accurately detected by consumers (¶6(c)).  Indeed, *a number of its Trays have included less shrimp than its stated 13.5 ounce "target," and one Tray even included less than 12 ounces.  See* ¶¶ 28-29.  The regulations are expressly intended to protect consumers from such Lochnerian, *laissez-faire* risks.[4]

### III.   Plaintiff's GBL § 349 Claim Arises Under New York's Concurrent Power To Prevent Deceptive Labeling Practices, And Does Not Conflict With Federal Law

Plaintiff's GBL § 349 claim is brought because Costco's Tray labeling practice is deceptive in violation of the statute.  Costco's argument that the absence of a federal cause of action under the FDCA (Costco Br. 12-14) precludes the claim is completely foreclosed by the recent decision of the Supreme Court in *Wyeth v. Levine,* 129 S. Ct. 1187, 1199-1200 (2009), where the Supreme Court expressly held that Congress intended state labeling claims to proceed notwithstanding the absence of a FDCA cause of action:  "Congress did not provide a federal remedy [under the FDCA because] it determined that widely available state rights of action provided appropriate relief for injured consumers."  *See also Medtronic, Inc. v. Lohr,* 518 U.S. 470, 495 (1996) (negligence and strict liability claims with respect to pacemaker not preempted under Medical Device Act because states have "the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements") ("The presence of a damages remedy . . . merely provides another reason for manufacturers to comply with identical existing 'requirements' under federal law.").

---

[4]     Contrary to Costco's argument (Costco Br. 12-15), GBL § 349(d) only provides Costco with a "complete defense" if 21 C.F.R. §§ 102.54 and 102.5, and the other regulations cited in Arguments I and II, are held to be inapplicable.  Plaintiff respectfully submits that they are all directly applicable, and directly on point.

Costco is well-aware of this, as several of the cases it cited in its Appeal Brief in the Second Circuit (but not now) make clear.  For example, in *In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litig.,* 2009 WL 1703285 at *7 (C.D. Cal. June 17, 2009), the District Court clearly defined the proper allocation of labeling enforcement authority:

> . . . Plaintiffs [cannot] predicate . . . state consumer fraud claims on what are, in essence, misbranding claims, absent allegations [of] false or deceptive statements. This is because off-label promotion is not inherently fraudulent; *truthful* off-label promotion of drugs does not violate . . . state consumer protection laws. . . . [T]he Court dismissed Plaintiff's previous pleading because it failed to state a cognizable fraud claim-not because it stated a fraud claim that was preempted by the FDCA.  *Indeed, the Court explicitly recognized that Plaintiffs could state a claim by identifying specific representations by Amgen that were literally false, misleading, or contained material omissions, even if those representations involved off-label promotion or otherwise fell within the purview of the FDCA.* (emphasis added)

*See also Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) ("the conduct on which the plaintiff's claim is premised *must* violate the FDCA if the claim is to escape express preemption [under the FDCA and FPLA preemption statutes]").  Simply stated, a state law labeling claim is only precluded if it seeks to impose requirements not identical to, or different or less stringent than, the federal statutes and regulations -- regardless of the absence of a federal right of action.  *See* 21 U.S.C. §§ 343-1(a)(2) & (a)(3); 15 U.S.C. § 1461.

Because Costco's conduct is independently deceptive under state law, Costco's reliance on *Conboy v. AT&T Corp.,* 241 F.3d 242 (2d Cir. 2001), and *Broder v. Cablevision Sys. Corp.,* 418 F.3d 187 (2d Cir. 2005)*,* is equally misplaced (Costco Br. 10-12).  Like the FDCA cases discussed above, these cases similarly hold that a party cannot create a claim under GBL § 349 based on the alleged violation of another statute which does not include a private right of action *and does not itself involve or regulate deceptive conduct independently actionable under state law. See Conboy,* 241 F.3d at 257-58 ("plaintiffs have not alleged any type of deception here");

*Broder,* 418 F.3d at 199 (same).  *Cf. PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1112-13 (2d Cir. 1997) ("unique" plaintiff suffering no independent cognizable injury under Lanham Act precluded from asserting claim that non-competing product was being sold without FDA approval).

Finally, the Supreme Court's holding in *Wyeth, supra* -- that Congress did not provide a federal cause of action under the FDCA because it expressly intended to allow state law labeling claims instead -- renders the rationale of *Broder* quoted by Costco at page 11 of its brief inapplicable.  Although in *Broder* the Second Circuit found that the lack of a federal private right action under the Federal Communications Act was dispositive because holding to the contrary "would essentially be attributing to the New York legislature an intent to thwart Congress's intentions on a significant scale," 418 F.3d at 199, here a state law cause of action is specifically what Congress intended under the FDCA, and the New York legislature would be thwarting Congressional intent by preventing an independent state law cause of action under GBL § 349 for independently deceptive labeling conduct.[5]

As noted, *supra,* GBL § 349 "on [its] face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad." *Karlin v. IVF Amer., Inc.,* 93 N.Y.2d at 290-91.  Plaintiff's cause of action is entirely consistent with and furthers the intent of the New York legislature under GBL § 349, and fully complements both the federal and state law labeling enforcement schemes.

---

[5]     The holding in *Wyeth* also forecloses Costco's fall-back argument that the FDA somehow has primary jurisdiction here (Costco Br. 21 n.8).  The federal and state enforcement powers are concurrent and complimentary.  Furthermore, the applicable FDA regulations governing Costco's practices are already in place.  A straight-forward construction of the plain language of the regulations to determine their applicability is precisely what a court does, and such an exercise of Article III judicial power is ripe for this Court here.

## CONCLUSION

Costco's attempt to equate its practice regarding the shrimp its Shrimp Cocktail Tray with "one box of cereal [with] more or fewer raisins," or "one tin of mixed nuts [with] more or fewer cashews" (Costco Br. 9), is a cynical syllogism.  Nor is the Tray a "catch-as-catch can" sandwich bought at the corner deli.  The shrimp in the Tray is an *extremely expensive* food product for which even small, undetectable variations are material and equal millions of dollars of value based on the Tray volume sold by Costco.  The Tray is federally regulated for a number of reasons – all of which are precisely intended to protect consumers and to prevent the unequal, unjust and deceptive weights and measures conduct Costco seeks to defend.

Plaintiff's proposed Second Amended Class Action Complaint states a claim under Fed. R. Civ. P. 12(b)(6), and the proposed amendment is not futile.  Thus, leave to amend should be granted by the Court.

Dated: New York, New York
         August 31, 2010

Respectfully submitted,

LAW OFFICES OF WILLIAM R. WEINSTEIN

By:     /s/ William R. Weinstein
         William R. Weinstein
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 575-2205
wrw@wweinsteinlaw.com

ATTORNEYS FOR PLAINTIFF
AND THE CLASS